INTERSTATE FIRE AND CASUALTY COMPANY, Plaintiff,

v.

HARTFORD FIRE INSURANCE COMPANY, Defendant.

Civ. A. No. 81–74543.

United States District Court, E. D. Michigan, S. D.

Oct. 12, 1982.

Gretel S. Robinson, Bloomfield Hills, Mich., for plaintiff.

J. Michael Malloy, III, Troy, Mich., for defendant.

**1186**

## OPINION

FEIKENS, Chief Judge.

This diversity case is before me on cross motions for summary judgment, both parties having submitted motions therefor, and there being no factual issues in dispute. The issue is whether plaintiff Interstate Fire and Casualty Company ("Interstate") is entitled to contribution from defendant Hartford Fire Insurance Company ("Hartford"), and if so in what amount.

Both parties issued insurance policies to a medical services company, Mikamara Enterprises ("Mikamara"). Among other services, Mikamara arranges nursing care for invalids living at home. In 1977, Mikamara assigned one of its practical nurses to take a client, Jack Weiss, on an outing. The nurse, Sharon Lee, went to Weiss' apartment and twice, between his apartment and her car, she allegedly negligently let Weiss fall. Weiss had suffered a stroke the year before and could not support himself. Lee left Weiss standing unsupported each time before he fell. He fell first in the elevator while Lee was unfolding his wheelchair and then again as Lee was putting the wheelchair into her car and he was leaning against the car.

Weiss subsequently sued Mikamara.[1] Interstate assumed defense of the suit and settled for $75,000. It also paid $11,280 in attorney's fees and $262 in costs. Hartford filed an appearance but refused to participate. It maintained then and now that its policy does not cover Weiss' suit and the resultant settlement. Interstate now sues Hartford for contribution.

### I.

The critical coverage provision in the Hartford policy is "Coverage C—Bodily Injury and Property Damage Liability" in "Section II Liability Coverage." It reads in pertinent part:

[Hartford] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising *out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises* and [Hartford] shall have the right and duty to defend any suit . . . . (Emphasis added.)

In order for Hartford to be liable under this provision for the damages suffered by Weiss, there must be

(1) "an occurrence" which causes bodily injury,

(2) arising out of any "operation necessary or incidental to the business of the named insured,

(3) "conducted at or from the insured premises."

■ An occurrence as defined by the policy "occurrence" means an accident "which results in bodily injury . . . neither expected nor intended from the standpoint of the insured." Weiss' fall and injury fit this definition. No allegation has been made that either the nurse or Mikamara expected or intended Weiss to fall and injure himself.

Mikamara is in the business of caring for invalids at home. This includes taking clients on outings. Thus, the accident arose out of an operation necessary or incidental to Mikamara's business.

The accident occurred at Weiss' residence, not at Mikamara's office headquarters. The question is whether or not the accident arose from "business . . . conducted at or from" Mikamara's office. Defendant argues that "from" means "at" in this circumstance. This reading makes "from" a redundancy. According to the affidavit of Michael T. Callaway, president of Mikamara, its offices served as a dispatching and bookkeeping headquarters. None of the actual work of the business takes place at its offices. Rather, employees were dispatched

1. *Weiss v. Mikamara*, No. 78–179155 NO (Oakland County Circuit Court, dismissed August 7, 1981).

to various locations in the area where they performed the services for which Mikamara received payment. Thus, it seems that much of the work necessary or incidental to Mikamara's business was conducted at locations away from its offices.

Like the court in *Herring v. Golden State Mutual Life Insurance Co.,* 114 Mich.App. 148, 154, 318 N.W.2d 641 (1982), I am bound by the standard rule of construction of insurance contracts as set out by the Michigan Court of Appeals in *State Farm Mutual Automobile Insurance Company v. Ruuska,* 90 Mich.App. 767, 777, 282 N.W.2d 472 (1979):

> "Insurance policies must be construed in accord with the ordinary and popular sense of the language used therein.... Insurance policies drafted by the insurer must also be construed in favor of the insured to uphold coverage.... This same rule applies to exclusion provisions in the policy.... To be given full effect, an insurer has a duty to clearly express the limitations in its policy.... A technical construction of policy language which would defeat a reasonable expectation of coverage is not favored. *Crowell v. Federal Life & Casualty Co.,* 397 Mich. 614, 623, 247 N.W.2d 503 (1976). (Citations omitted.)"

As to this aspect of the case, I conclude that the Hartford policy insures Mikamara for the liability it incurred to Weiss.

## II.

■ Hartford also claims there is no coverage because Weiss' injuries were a result of the loading of an automobile which is excluded from coverage.[2] The clear implication of the policy is that it will not cover injuries which an automobile liability (or no-fault) policy should cover. Interstate argues that because Weiss' second fall occurred while the nurse was loading the wheelchair into her car the exception applies. Weiss' fall did not occur because the nurse was loading the wheelchair into her car; it happened because she left Weiss standing unattended. That Weiss happened to be standing next to the car the second time he fell is a mere fortuity. Weiss could have been standing anywhere; he was in the elevator when he fell the first time. The causal connection between the use or loading of the car and the injury must be more than incidental or fortuitous. A simple "but-for" test will not suffice. *Gajewski v. Auto-Owners Ins. Co.,* 112 Mich.App. 59, 314 N.W.2d 799 (1981). *See also,* cases cited therein.

Also as to this aspect of the case, I conclude that because Hartford's policy insures Mikamara against its liability to Weiss, Hartford owes Interstate contribution.

## III.

The remaining questions involve the extent of Hartford's contribution. Both policies have identical provisions stating in substance that if the other policy provides for contribution by equal shares, then it will contribute an equal share; but if the other policy does not provide for equal share contribution, it will contribute in proportion to the policy limits.[3] While neither counsel

---

2. The relevant language under the "Exclusions" section of the policy provides:
   This insurance does not apply
   (b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
   . . . . .
   (2) any other automobile or aircraft operated by any person in the course of his employment by any insured.

3. The Hartford policy has a limit of $300,000; Interstate's limit is $600,000. Both policies' "other insurance" provisions state:
   When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
   1. Contribution by Equal Shares: If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then

**1188**

found any cases applicable to this problem, the Court found six. As none are binding precedent (it seems this is a problem of first impression in Michigan), it is necessary to examine the logic of the decisions.

The United States Court of Appeals for the Fifth Circuit has been asked three times to determine whether this "I will if you will" [4] language in both policies means that the insurers should contribute in proportion to policy limits, or by equal shares.

In *Georgia Casualty & Surety Co. v. Universal Underwriters Ins.,* 534 F.2d 1108, 1111 (5th Cir. 1976), two judges adopted the district court's opinion as their own. It states in relevant part:

Both policies containing the identical provision do not provide either for pro rata contribution or for contribution by equal shares. Each depends upon the other policy to provide validity and meaning to one or the other of the subparagraphs of Condition 6. This Court, therefore, is of the opinion that the condition of 6(a), "If all of such other valid . . . insurance provides for contribution by equal shares," has not been met and that the condition of 6(b), "If any of such insurance does not provide for contribution by equal shares," has been met and that, therefore, each policy provides that the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under the policy bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

*Accord, Eagle Star Ins. Co. of America v. General Accident Fire & Life Ins. Co., Ltd.,* 100 Misc.2d 792, 420 N.Y.S.2d 83, 84 (Sup. Ct.1979), which states:

It is essentially conceded that neither policy contains a provision calling for contributions by equal shares. That being

continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.
2. Contribution by Limits: If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such

so, it would appear that paragraph 6(b) of the policies, dictating that the loss be prorated, would govern rather than 6(a) which would mandate an equal participation.

Defendant argues, however, that despite what appears to be the clear language of paragraph "6", a contrary result is required because of public policy considerations. It is urged that to adopt the plaintiff's position would have an adverse effect upon the desirable trend toward policy standardization and would result (just how is not too clear) in higher premiums.

In 1979, a panel of the Fifth Circuit, which included a majority member of the *Georgia Casualty* panel, unanimously held (without reference to *Georgia Casualty*) that the parties should contribute equally, saying:

Subdivision (b), providing for contribution on a pro rata basis, does not become applicable unless the "other insurance does not provide for contribution by equal shares." In this case, both policies clearly *provide* for contribution by equal shares and neither policy provides a basis other than equal as the exclusive basis for computing contribution. The fact that the policy provides for an alternative method of apportioning the loss had there been no equal share provision in the other policy does not mean that neither policy had such an equal share provision in it. We refuse to construe the word "provide" to require an unconditional promise. Had that been intended, the draftsman could have introduced paragraph (b) with, "If any of such other insurance does not provide unconditionally, for contribution by equal shares . . . ." (Emphasis in original.)

loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

4. *Georgia Casualty & Surety Co. v. Universal Underwriters Ins.,* 534 F.2d 1108, 1111 (5th Cir. 1976) (Clark, J., dissenting).

*McDaniels v. Great Atlantic & Pacific Tea Co.,* 602 F.2d 78, 83 (5th Cir. 1979). *McDaniels* is relied on in *Ryder Truck Rental, Inc. v. United States Fidelity & Guaranty Co.,* 527 F.Supp. 666, 670 (E.D.Mo.1981).

In *Employers Casualty Co. v. Employers Commercial Union Ins. Co.,* 632 F.2d 1215, 1220 (5th Cir. 1980), the Fifth Circuit again confronted the same problem. Without citation to either of its earlier opinions, the court ordered contribution by equal shares saying that "both policies show a preference for contribution by equal shares." *Accord, Commercial Union Assurance Cos. v. Aetna Casualty & Surety Co.,* 455 F.Supp. 1190, 1195 (D.N.H.1978).

■ I am persuaded that a close reading of the policy language (specifically the word "provides") and public policy both require that the contribution provision be construed to say that when both policies have this identical language, the insurance companies shall contribute equally.

■ Interstate and Hartford both ask that their attorney's fees for the primary litigation be apportioned. Because Interstate actively defended Mikamara while Hartford merely filed an appearance and then sat on the sideline denying coverage, I find that Interstate is entitled to contribution, but that because Hartford only expended money to protect itself (rather than Mikamara), it is not so entitled.

These results lead to a granting of Interstate's motion for summary judgment in its entirety and a denial of Hartford's summary judgment motion in its entirety.

Pursuant to Mich.Comp. Laws Ann. § 600.6013(4) (West Supp.1982), and *Clissold v. St. Louis-San Francisco Railway,* 600 F.2d 35, 39 n.3 (6th Cir. 1979), Interstate is entitled to interest at the rate of twelve percent (12%) compounded annually, from December 7, 1981, when the complaint was filed, to the date the judgment is entered. Plaintiff is entitled to post-judgment interest pursuant to the Federal Courts Improvement Act of 1982, Pub.L. 97–164, § 302(a), 96 Stat. 25, 55–56 (1982), at the current rate of 10.41% compounded annual-ly, computed to the date the judgment is satisfied.