■ PENNSYLVANIA GENERAL INSURANCE COMPANY, as Subrogee of ANTHONY J. KRUPA, Plaintiff, v AUSTIN POWDER COMPANY et al., Appellants, and BISON FORD TRUCK SALES et al., Respondents, et al., Defendants.—Order unanimously reversed, on the law, without costs, and defendant Austin Powder Company's motion granted. Memorandum: Defendant Austin Powder Company appeals from an order of Special Term which granted summary judgment to defendant Bison Ford Truck Sales on its cross claim for indemnification in the instant action.

The action arises out of an explosion that occurred in April 1979 at a stone quarry operated by defendant Lancaster Stone Products. An employee of Austin rented a truck from Bison in which he loaded and transported explosives from Austin's magazine to the Lancaster quarry. The explosion at the quarry site caused considerable property damage, including damage to an automobile of one Anthony Krupa. Krupa's

insurance carrier, Pennsylvania General Insurance Company, paid the claim ($2,202.35) and commenced the instant action, as subrogee of its insured, to recover this amount from defendants Austin, Bison and Lancaster. Liberty Mutual Insurance Company, the carrier for Bison, settled the claim with plaintiff on behalf of Bison, who then cross-claimed against Austin for the amount paid in settlement. Based on an indemnification clause contained in the rental agreement between Bison and Austin, Special Term granted Bison's motion for summary judgment on its cross claim and denied Austin's motion to dismiss the cross claim. We reverse.

In a prior declaratory judgment action seeking to establish the priority of insurance policies applicable to claims for damages arising out of the explosion by virtue of the rental of the truck by Bison to Austin and the subsequent use of the truck by Austin, we set forth the order in which the various policies would be called upon to provide coverage among the insurers. There we held: (1) the Liberty Mutual (insurer of Bison) basic automobile policy provides primary coverage and Austin is an additional assured under this policy; (2) Aetna Casualty Company's (insurer of Austin) business automobile policy provides excess coverage for nonowned vehicles and covers the same risk as the Liberty comprehensive auto excess policy. Each policy provides a form of nonprimary coverage. Thus, each excess insurer must contribute to losses in proportion to the limit each policy bears to the total limit of all policies providing the same coverage; (3) British Excess Insurers' (excess insurers of Austin) policy provides coverage after all other excess insurance *(Aetna Cas. & Sur. Co. v Liberty Mut. Ins. Co.,* 91 AD2d 317, 324-325).

Specifically excluded from our determination in that appeal was the consideration of Bison's right of indemnification from Austin under the terms of the rental agreement. "[W]here complaints allege alternative theories upon which ultimate liability may be based, questions of indemnification should usually be determined in the underlying lawsuits, not in a declaratory judgment action (see *Public Serv. Mut. Ins. Co. v Goldfarb,* 53 NY2d 392, 398-399; *Cordial Greens Country Club v Aetna Cas. & Sur. Co.,* 41 NY2d 996, 997; *New York Mut. Underwriters v Cavallaro,* 90 AD2d 962; *Touchette Corp. v Merchants Mut. Ins. Co.,* 76 AD2d 7, 10-11, *supra)" (Aetna Cas. & Sur. Co. v Liberty Mut. Ins. Co., supra,* pp 323-324). The issue of indemnification under the rental agreement has now ripened by virtue of the loss sustained by Krupa and the payment by Bison (through its insurer, Liberty) of this claim

*(see, Aetna Cas. & Sur. Co. v Liberty Mut. Ins. Co., supra,* p 325).

For the purposes of this appeal, the operative provision of the rental agreement provides that Austin will indemnify Bison for "all losses, liabilities * * * and expenses arising out of the use or possession of the vehicle". Read alone, this clause clearly obligates Austin on the loss in this case because it arose from Austin's use of the truck rented from Bison.

This indemnification clause, however, may not be read alone, but, instead, must be read as part of the whole rental contract, and each part of the contract must be interpreted so that all of its terms are given a reasonable meaning and effect *(Weiss v Weiss,* 52 NY2d 170, 174; *Rentways, Inc. v O'Neill Milk & Cream Co.,* 308 NY 342, 347; *Interested Underwriters v Ducor's Inc.,* 103 AD2d 76, 78; *Robshaw v Health Mgt.,* 98 AD2d 986, *appeal dismissed* 62 NY2d 942). To this end, that portion of the rental agreement which provides for vehicle insurance becomes critical. This provision of the agreement requires Bison to obtain insurance coverage for persons using a rental vehicle with its permission in accordance with the standard provisions of an automobile liability insurance policy with certain stated amounts. The insurance clause of the rental agreement further provides, "[t]o the extent permitted by law, coverage hereunder is *primary with respect to any other insurance which may be available to the customer* [Austin]" (emphasis supplied). Read literally, the two clauses would appear to cancel each other out, but such a result need not obtain. The clauses of the rental agreement are readily harmonized by holding that Bison agreed to provide primary liability coverage, and Austin agreed to indemnify Bison for losses which exceeded Bison's primary insurance coverage. This result, establishing the relative obligations of the parties to the rental agreement, is wholly consistent with the ranking of priorities of insurance policies available to the same parties already established by this court *(Aetna Cas. & Sur. Co. v Liberty Mut. Ins. Co., supra).* To hold otherwise under the facts of this case, would violate the established rule that an insurer has no right of subrogation against its insured under the same policy *(see, Hartford Acc. & Indem. Co. v Michigan Mut. Ins. Co.,* 61 NY2d 569; *Schwartz v Lipkin & Son,* 76 AD2d 141). "Austin was a rentee of Bison. As such, it is an additional insured under the Liberty Mutual policy" *(Aetna Cas. & Sur. Co. v Liberty Mut. Ins. Co., supra,* p 321).

That Austin also carries insurance for contractual liability under the terms of Aetna's comprehensive general liability

policy (which we did not rank in our prior decision) does not change the result here. The fact that Austin has chosen to purchase contractual liability insurance does not change the fact that it is an additional insured under Liberty's primary policy issued to Bison, as previously determined by this court. Since the claim asserted in the instant action falls far short of the limits of the primary coverage, we need not address the issue of the possible involvement of this policy. (Appeal from order of Supreme Court, Erie County, Doyle, J.—summary judgment.) Present—Hancock, Jr., J. P., Doerr, Green, O'Donnell and Schnepp, JJ.